FILED
2010 Mar-12  PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | |
|---|---|
| **CHRISTOPHER A. JOHNSON,**  )  )  **Plaintiff,**  )  )  **v.**  )  )  **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Michael J. Astrue,**  )  )  **Defendant.**  ) | **CIVIL ACTION NO. :**  **3:08-CV-1761-VEH** |

## MEMORANDUM OPINION

Plaintiff Christopher Johnson ("Mr. Johnson") brings this action pursuant to 42 U.S.C. § 1614(a)(3)(A) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI").[1] Mr. Johnson timely pursued and exhausted

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Social Security Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## **FACTUAL AND PROCEDURAL HISTORY**

Mr. Johnson was a 21-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 323, 330). He attended high school and graduated with a certificate. (Tr. 330).

Mr. Johnson has no prior work record. (Tr. 337). Mr. Johnson claims disability beginning on October 1, 2002. (Tr. 18). Mr. Johnson suffers from adjustment disorder with depressed mood; mild mental retardation; hypertension; and morbid obesity. (Tr. 18).

Mr. Johnson protectively filed a Title XVI application for SSI on January 25, 2005. (Tr. 16, 40-43, 47). The SSI claim was denied initially on June 17, 2005. (Tr. 16, 27-31). Mr. Johnson timely filed a request for a hearing on July 19, 2005. (Tr. 16, 32). The hearing before the ALJ was held on November 13, 2006. (Tr. 16, 323). The ALJ concluded Mr. Johnson was not disabled as defined by the Social Security Act and denied his SSI application on February 21, 2007. (Tr. 16-24).

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Mr. Johnson filed a request for review on April 27, 2007. (Tr. 10). On July 21, 2008, the Appeals Council denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 4).

On September 24, 2008, Mr. Johnson filed his complaint with this court asking for review of the ALJ's decision. (Doc. 1). This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Mr. Johnson had not engaged in substantial gainful activity since the alleged onset of his disability on October 1, 1992.[4] (Tr. 18). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

---

[4] The ALJ noted that Mr. Johnson had "previously received child's Supplemental Security Income payments with an onset date of disability of October 1, 1992" and that "[a]n age-18 redetermination found that disability ceased as of March 2004, and the claimant did not file a request for reconsideration." (Tr. 16).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: adjustment disorder with depressed mood, mild mental retardation, hypertension, and morbid obesity (Tr. 18 (citation omitted)). Accordingly, the ALJ concluded that Mr. Johnson satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Johnson did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11). Specifically, the ALJ addressed why Mr. Johnson satisfied neither Listing 12.05C, 12.05D, nor 12.04D. (Tr. 19-20).

The ALJ then evaluated Mr. Johnson's residual functional capacity at step four, and the claimant was found to have the ability to "meet the demands of medium work."[5] (Tr. 20). The ALJ additionally described Mr. Johnson's functionality to include:

> He is able to comprehend and recall brief and uncomplicated directions. He is able to carry out short and simple instructions. His attention and concentration is adequate for two-hour periods across an eight-hour day. He has adequate ability to adapt to changes if gradual and goals are

---

[5] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c) (current through Feb. 26, 2010).

simple. He occasionally can finger and frequently can perform gross manipulation.

(Tr. 20).

Later in his decision, the ALJ described Mr. Johnson's residual functional capacity ("RFC") as a reduced range of medium work:

> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, <u>the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations</u>.

(Tr. 24 (emphasis added)). Further, the ALJ accepted "the testimony of the vocational expert that the claimant has no past relevant work activity." (Tr. 23).

Because of the ALJ's finding that Mr. Johnson had no past relevant work experience, it was necessary to continue to step five of the sequential analysis. (Tr. 23-24). Factoring in the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ concluded that Mr. Johnson was capable of performing "medium, unskilled occupations such as housekeeper . . . stock clerk . . . [and] hand packager" and that these positions existed in significant numbers in the national economy. (Tr. 24). Accordingly, the ALJ concluded Mr. Johnson was not disabled as defined by the Social Security Act, at any time from January 25, 2005,

through February 21, 2007, the date of the ALJ's decision, and denied his SSI claim. (*Id.*).

## **ANALYSIS**[6]

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]

In this appeal, despite seeking several extensions of time (Docs. 11, 12), which the court granted by margin orders dated June 9, 2009, and July 7, 2009, respectively, Mr. Johnson never filed a brief in support of his appeal. On August 14, 2009, Defendant filed his brief. (Doc. 13). Having study the administrative record, the

---

[6] The undersigned has recently rendered two other decisions which similarly address the inadequacies of the respective ALJ's RFC determinations from which the analysis and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same).

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

court believes that, in filing his appeal, Mr. Johnson challenges the ALJ's RFC finding that he can perform a reduced range of medium work.

I. **IN THE ABSENCE OF A MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MR. JOHNSON CAN PERFORM MEDIUM WORK OR A REDUCED RANGE OF MEDIUM WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of his RFC determination, the ALJ expressly relies upon the opinion of Dr. Blotcky with respect to Mr. Johnson's mental abilities:

> Despite the allegations of mental dysfunction, nothing in the record supports that the claimant is incompetent due to a medically determinable impairment. The undersigned accepts the assessment of Dr. Blotcky that the claimant "does not have a psychotic illness." He noted that claimant did not seem anxious or depressed. He also found that although the claimant graduated from high school in classes for the learning disabled, he did not "meet the criteria for a specific learning disability" because "his academic functioning is consistent with his IQ scores." This conflicts with the aunt's assessment that the claimant is unable to care for his own needs since his mother's death, and nothing in the record confirms her allegations that [] claimant has a muscular disorder or autism. On the contrary, Dr. Blotcky found that the claimant "is appropriate for a vocational training program" but "should be placed in a job that is rote, is low in stress, and has few time demands."

(Tr. 22).

The court has studied the Psychological Evaluation Report prepared by Dr. Blotcky on Mr. Johnson on November 3, 2005. (Tr. 185-86). While Dr. Blotcky does suggest several job-related limitations for Mr. Johnson (which have been incorporated

into the ALJ's decision), none of them relates to Mr. Johnson's physical or exertional abilities.

More specifically, while Dr. Blotcky does suggest that Mr. Johnson suffers from muscular dystrophy and that he should "be under the care of a physician for his muscular dystrophy" (Tr. 185A, 186),[8] the vocational requirements that he recommends, including "place[ment] in a job that is rote, is low in stress, and has few time demands" do not encompass an opinion about the range of work that Mr.

---

[8] The court notes that Dr. Blotcky's express conclusion that Mr. Johnson suffers from muscular dystrophy and his related recommendation that he be under the care of a physician for the condition brings into question the ALJ's following findings regarding whether Mr. Johnson suffers from some type of muscle disorder.

> With regard to the representative's allegation that the claimant was "born disabled with a muscle disease," no medical evidence of record supports this. The Sparks Clinics' records show that the claimant was diagnosed in 1992 with hypotonia and obesity and needed further evaluation for "possible genetic syndrome." However, the claimant was not diagnosed with a muscle disease.

(Tr. 22 (emphasis added)).

Moreover, the ALJ's reasoning here is internally inconsistent. For example, while the ALJ expressly recognizes Mr. Johnson's early diagnosis of hypotonia, "a weakness in his muscles which interfere[s] with his coordination and his activity level" (Tr. 191 (emphasis added)), he never suggests that this particular muscle condition has resolved itself or otherwise explains why it should not also be considered a severe impairment similar to Mr. Johnson's apparently related obesity diagnosis. (*See, e.g.*, Tr. 191 ("[Hypotonia] increases his chance of being overweight. Christopher is very overweight at this time and this also interferes with his ability to be active.") (emphasis added)).

Johnson is physically capable of performing in light of his "medical and educational limitations[.]" (*Id.*). Therefore, Dr. Blotcky's psychological assessment does not provide substantial evidence that Mr. Johnson is capable of performing a reduced range of medium work.

The ALJ also refers to records from Dr. Moizuddin in support of his "find[ing] that the claimant's impairments, including obesity, do not restrict his ability to perform routine movement and necessary physical activity within a medium exertional work environment." (Tr. 23). Dr. Moizuddin examined Mr. Johnson on June 1, 2005, and reported on several different raw physical findings. (Tr. 169-173). However, nowhere within these records is there an indication about Mr. Johnson's strength, much less a recommendation on the range of work he is physically capable of performing given his severe impairments, including hypertension and morbid obesity. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

Therefore, neither the records from Dr. Blotcky nor Dr. Moizuddin provide substantial evidence that Mr. Johnson is capable of performing medium work.

Moreover, the court has been unable to locate a medical source opinion[9] or a physical capacities evaluation conducted by a physician that indicates what type of work Mr. Johnson is capable of performing or delineates whether any physical vocational restrictions are appropriate given his severe physical impairments of hypertension and morbid obesity.[10] *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who similarly determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers' medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person.

---

[9] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

[10] Defendant's brief also does not cite to any physical medical source opinion or physical capacities evaluation performed on Mr. Johnson.

> *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Mr. Johnson's work-related physical abilities based upon the unfiltered information contained in his medical records. Moreover, the lack of a medically-determined physical RFC is particularly critical here when,

undisputably, Mr. Johnson has no relevant work experience upon which a medium RFC determination might be substantially based. As the undersigned has previously recognized in another fifth-step burden case that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Mr. Johnson by a physician, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted). Relatedly, the ALJ's determination that Mr. Johnson can perform medium work or a reduced range of medium work is not supported by substantial evidence. Accordingly, the decision of the

Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

    **DONE** and **ORDERED** this the 12th day of March, 2010.

                                            **VIRGINIA EMERSON HOPKINS**
                                            United States District Judge